Christy Case.

Argued May 23, 1949.  Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Laurence H. Eldredge,* for appellant.

*William F. Fox* and *Raymond Pearlstine,* for appellee, were not heard.

OPINION BY MR. JUSTICE LINN, June 24, 1949:

In the court below, this proceeding was treated as an appeal from the refusal of the board of law examiners of Montgomery County to approve the appellant's application for admission to the bar of the county. The court agreed with the board. From the order dismissing the appeal from the board, dated November 23, 1948, the applicant appealed to this court. We all agree that the order must be affirmed.

It is unnecessary to detail the steps averred by appellant to have been taken unsuccessfully, prior to the filing of his petition of April 27, 1948, now before us. It is sufficient to say that at various times beginning with September, 1935, appellant applied to the board of law examiners for the required certificate of compliance with the local rules for admission to the bar and that some of those local rules were no longer in force when appellant filed the petition now under review.

The appellant was admitted to the bar of this Court and to the courts of Philadelphia County in 1934. He acquired a home in Montgomery County in 1935 and established a law office in his home, thereafter practicing his profession in his Philadelphia office as well as in his Montgomery County office, except when in the Navy. He is at a disadvantage in Montgomery County because, not being a member of the bar of that county, he cannot conduct litigation in its courts without associating local counsel with him. Desiring to avoid this disadvantage he instituted this proceeding. His petition was dismissed for want of compliance with rule 7, paragraph 9, subsection 5, of the requirements for admission adopted by the Montgomery County courts. It provides: "(5) Such ap-

plicant shall also deliver to the said Board a declaration signed by him, setting out that he intends permanently to practice in this county, and that he will, within three weeks of his admission, open and maintain his principal office therein, and that failure to do so, or removal of his principal office to another county shall be construed as a request by him to have his name stricken from the Roll of the Bar of this county. If the said Board shall approve the applicant this declaration shall be attached by the Board to their certificate recommending his admission, which shall be produced in open court when his motion for admission is made, and shall be filed thereafter with the Prothonotary."

Appellant declined to sign such a declaration [1] as part of the application made in October, 1947. The court relied on *Olmsted's Case*, 292 Pa. 96, 140 A. 634 (1928) in which a principal office rule established by the Delaware County courts was sustained. The question therefore is whether the rule, so recently sanctioned, and more recently embodied in our Rule 12½ shall be applied or whether it shall be set aside.

A lawyer ought to have no difficulty in deciding which, of more than one office maintained by him, is in fact his principal office. The record does not require us to attempt to frame a definition that would be all inclusive; cases will be decided as they arise. The object of the rule was stated by Chief Justice MOSCHZISKER

---

[1] The form submitted to him for signature was as follows: "I, ROLAND J. CHRISTY, do hereby declare that I intend to practice law permanently in Montgomery County, Pennsylvania, and that I will within three weeks of my admission open and maintain my principal office therein.

"Failure on my part so to do or removal of my principal office to another county shall be construed as a request by me to have my name stricken from the roll of the Bar of Montgomery County, Pennsylvania.

"WITNESS my hand and seal, this      day of April, A. D. 1948."

in *Olmsted's Case;* with that object in mind, "good fidelity to the court" should point the way in any case in which an applicant is in doubt.

In a deposition taken March 4, 1948, the appellant testified, "Q. What do you consider to be your principal office? A. Well, from a point of view of seeing clients I would say it would be Philadelphia. From the point of view of getting work done, I would say it is Montgomery County—that is, office work, desk work and records. Q. If you should be admitted to the Montgomery County Bar, what is your intention with respect to offices in the future? A. To continue them the same as I am at the present time. That is, I would say, I would have the office in Philadelphia and also the office in Montgomery County. Q. Now, at the present time where are your files and records kept? A. Most of them are kept in Montgomery County. Some of them are kept in the Philadelphia office. Q. What are your intentions as to the future with respect to the continuance of the present office in Montgomery County? A. My intention is to continue it the same as at the present time."

The principal office requirement means what it says, and the evidence of the appellant establishes that he declines to say in which county he maintains or will maintain his principal office. So long as the rule exists, it must be complied with. Since the institution of this proceeding in April, 1948, this Court has amended [2] the

---

[2] Rule 12½, effective March 23, 1949, provides: "Admission to the bar of this Court shall entitle anyone so admitted, to admission to the bar of any other court of this Commonwealth, subject, however, to the right of the examining board of the county in which his or her application for admission to the bar is filed to pass upon the applicant's moral character, notwithstanding any prior certification to such effect by the examining board of the county of his original registration, and subject, further, to the applicant's filing with the county examining board, if local rules so require, his written promise to

rules of admission to the courts of counties other than the county in which admission was first made.

Under the fifth heading of appellant's brief it is contended that "The principal office rule violates the due process clause of the 14th Amendment to the Federal Constitution." We must reject the contention. ". . . due process of law and the equal protection of the laws are secured if the laws operate on all alike and do not subject the individual to an arbitrary exercise of the powers of government . . ." *Duncan v. Missouri,* 152 U. S. 377, 382, 14 S. Ct. 570, 38 L. Ed. 485 (1893). The principal office rule does not discriminate against appellant in favor of any other applicant for admission; it applies to all candidates for admission to the Montgomery County bar. It is not in the class of unreasonable and unnecessary restrictions on the pursuit of an occupation within the rule considered in *Liggett Co. v. Baldridge,*

---

establish and maintain his principal office and place of law practice in the county to whose bar he seeks admission.

"In case an otherwise qualified applicant is denied admission to the bar of the county on the ground of a lack of the requisite moral qualifications, he or she shall have a right to a hearing on that issue before the county examining board, and if the decision is adverse to the applicant, the latter shall have a right of appeal to the State Board of Law Examiners, and if the decision there should also be adverse, the applicant shall have a right of appeal to this Court. Should the decision of the State Board of Law Examiners be a reversal of the decision of the county board of law examiners, the latter shall likewise have a right of appeal to this Court. The county board of law examiners shall have a stenographic record made of the hearing on the issue as to the applicant's moral qualifications, and every appeal herein provided for shall be accompanied by a transcript of that record.

"Any and all local rules for admission to the respective bars of the courts of the several counties of this Commonwealth, which prescribe length of residence in that county as a prerequisite to admission to the local bar or limit the number of admissions upon a quota basis, are hereby superseded."

278 U. S. 105, 113, 49 S. Ct. 57, 73 L. Ed. 204 (1928). Admission to the bar of a court is a judicial act, *Hoopes v. Bradshaw*, 231 Pa. 485, 80 A. 1098 (1911); *Stewart v. Bechtel*, 360 Pa. 123, 61 A. 2d 514 (1948) performed pursuant to power vested in the court by the law of this Commonwealth. In the opinion delivered *In re Lockwood*, 154 U. S. 116, 14 S. Ct. 1082, 38 L. Ed. 929 (1893), involving the right to practice law, it was said: "In Bradwell v. The State, 16 Wall 130 [21 L. Ed. 442 (1872)], it was held that the right to practise law in the state courts was not a privilege or immunity of a citizen of the United States; that the right to control and regulate the granting of license to practice law in the courts of a State is one of those powers that was not transferred for its protection to the Federal Government, and its exercise is in no manner governed or controlled by citizenship of the United States in the party seeking such license." This case was cited in *Smith v. Texas*, 233 U. S. 630, 636, 34 S. Ct. 681, 58 L. Ed. 1129 (1914), for the proposition: "If the service is public the state may prescribe qualifications and require an examination to test the fitness of any person to engage or remain in the public calling." See also *Brents v. Stone et al., Justices of the Supreme Court of Illinois* (E. D. Illinois), 60 F. Supp. 82, 84 (1945).

The fact that in other states lawyers are licensed to practice in all the courts of the state and in this Commonwealth are not so admitted, is no legal argument against the validity of the local procedure. The requirement of county licensing to practice in the county is probably traceable to early [3] custom in Pennsylvania.

Order affirmed, costs to be paid by appellant.

---

[3] See *History of Delaware County* by Henry Graham Ashmead, pages 233 et seq. and p. 247.