Doelp *v.* Doelp, Appellant.

Argued June 18, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*John M. McAllister,* with him *McAllister, Reif and Shapiro,* for appellant.

*Francis X. Diebold,* for appellee.

Opinion by Cercone, J., September 21, 1971:

David W. Doelp has appealed to this court from the lower court's entry of an order in the amount of $120.00 weekly for the support of three children, ages 10, 11, and 18. The children are living with their mother from whom appellant is divorced. Appellant has since remarried.

It is the husband's contention that the order is excessive in amount and also that the court below erred in preventing cross-examination of the wife as to the separate income of the children under a trust fund.

According to the record, and as the court below found, appellant's gross receipts for a two week period are in the sum of $630.22. The court, however, does not, in its opinion, state any figure for the take-home pay except to state "the respondent's take-home pay could be increased at least by $54.90 bi-weekly merely by having the proper deductions withheld from his paycheck". Even with this adjustment for the excessive amount of federal income tax withheld, the husband's net take-home pay for the two-week period would be $460.24 or $230.12 weekly. Of course, as the record below indicates, this net amount is further subject to state income tax and local tax deductions, some of which had become effective in May 1971. The new state income tax at 2.3% would mean a further deduction of approximately $15.00 from the bi-weekly pay or $7.35 weekly, thus lowering appellant's net weekly pay to $222.89. This would leave appellant with approximately $100.00 weekly after payment of the $120.00 support order. The appellant, who is a staff architect employed by Vincent G. Kling & Associates, testified as to his expenses as follows: "By Mr. McAllister: Q. Would you refer to that statement, Mr. Doelp, and give us a breakdown of your monthly expenses, your present monthly expenses? A. Rent, $220 a month.

422

Q. You live in what part of the city? A. Society Hill. Q. That's in center city; is that correct? A. Yes, basically; yes. Q. All right, fine. A. Telephone, $10.00 a month. Gas, $5.00. Electric, $15.00 a month. Transportation: Garage, gas for the car, $20.00 a month. Q. Is the car a necessity for you, Mr. Doelp? A. Yes. Q. In what respect is it necessary? A. I occasionally have to visit the sites of some of my projects. Q. Where might these projects be located? A. Anywhere. But the ones I would use the car for would be in the Philadelphia vicinity, within 150-mile radius. Q. All right. A. Car insurance, $29.66 a month. That is approximate. Clothing, $20.00 a month. Cleaning, shirts, laundry, it's like $20.00 a month. Professional dues and magazines, $20.00 to $16.00 a month. That's approximate. Christmas presents, twelve-fifty. Q. Is that for your children? A. That is per month, pro rated over the entire year for the children. That is not anything that I might purchase for anyone else. Entertainment during custody, $10.00 a month. Church, $23.00 a month. Sundries: Shaving, drugs, toothpaste, and so forth, just for me, $12.00 a month. Life insurance on the boys, $33.00 a month. Barber, $5.00 a month. Q. Back to your life insurance, who is the beneficiary of these insurance policies? A. The three boys. Q. All right; go ahead, continue. A. Barber, $5.00 a month. Food averages between $20.00 and $25.00 a week, for $100.00 a month. And car maintenance, an average of $8.00 a month. Q. After the payment of these necessities, what does it allow you on a weekly basis for your own entertainment and the entertainment of—your own entertainment, Mr. Doelp? A. Nothing. Virtually nothing."

It is readily apparent, therefore, that the lower court's order does impose a hardship upon the appellant, and it is our opinion that the entry of an order

in such amount without inquiry into the children's interest in a trust fund, was error. The wife was asked: "By Mr. McAllister: Q. Are you the recipient or beneficiary of a trust fund on behalf of these children? A. That is personal. I will never answer it. Mr. Diebold: Objection, your Honor. This is entirely irrelevant to a support proceeding for her sons. The Court: The objection is sustained. Mr. McAllister: I think our courts have ruled, your Honor, not only are we entitled to go into her financial income in the course of a year, but especially if there is a trust fund where she is a trustee and where—The Court: I don't think it changes the fact that he must support his children. Mr. McAllister: No, I am not saying it changes that fact, your Honor, but it may show you what else is there."

In *Hill v. Clark*, 74 Pa. Superior Ct. 181 (1920), the court noted: "The rule now in force in England, and generally adopted in this country (In re Kane, 2 Barb. Ch. 375; Dawes v. Howard, 4 Mass. 97; Alling v. Alling, 27 Atl. 655, N.J. Eq.;—see also Seibert's App., 19 Pa. 49; Leiby's App., 49 Pa. 182; Kinike's Est., 29 W.N.C. 163, 9 Lanc. L.R. 30), that courts of equity will order a parent whose means are inadequate, to be reimbursed for sums spent in the support and education of his child out of the income of the latter's estate, having regard to the fortune of the child and the situation, ability and circumstances of the parent, is not applicable." Though that rule was not applicable to the fact situation there present, the court proceeded to state: "The case is governed rather by another principle, that a trust fund created for the express purpose of educating a child may be applied for that object notwithstanding the liability of the parents and the fact that they may be able to support and educate the child out of their own means. Freeman v. Coit, 27 Hun.

424

447; In re Friedlander, 178 N.Y. Supp. 50; Myers v. Myers, 2 McCord Chancery (S.C.) 214, 16 Am. Dec. 648; 29 Cyc. 1617."

We hold it was error, therefore, for the court below to refuse cross-examination as to the children's interest under the trust fund. If the trust fund expressly provides for the use of money for the support and education of the children, that fund can be resorted to for the children's support and education notwithstanding the liability of the appellant and his ability to support and educate his children. If such evidence be admissible where the parent does have adequate means to support his children, how much more so should such evidence be relevant and competent where the father's income appears to be inadequate to provide the amount of support the mother feels the children require. Even under the English rule noted in *Hill*, supra, as generally adopted in the United States, if the trust agreement does not expressly provide for the children's support and education, their interest thereunder should still be considered where, as here, the father's income can be viewed as inadequate.

Further, we note from the record that the son, who is 18 years of age and attending college,[1] has independent earnings during the summer of $70.00 per week for a period of fifteen weeks, thus making his annual earnings $1,015. This income was a relevant circumstance to be considered by the trial judge in making the order appealed from. In *Com. ex rel. Borrow v. Borrow*, 199 Pa. Superior Ct. 592 (1962), this court made the observation, analyzing the financial situation of a mother claiming support for her son enrolled in military school: "This amount, plus the $125 per week that the wife is earning and the $40 per week support order to

---

[1] No issue is raised in this appeal by appellant as to the termination of this child's right to support.

the wife, gives to her and the child $189 per week on which to live. *This is based on the assumption that the 17 year old boy earns nothing.* The defendant after contributing $50 toward the $189 has only $86 per week for himself." (emphasis supplied)

In this case the son, as stated, is earning $1,000 a year. The mother testified that he does not use that money to support himself with "books and clothes" but uses it to buy "his own things that he needs, sports supplies". It is our opinion that though these earnings do not of themselves absolve the appellant from the duty of support otherwise owing, nevertheless such earnings are relevant to any consideration of the amount of support payable by the father to the son. As stated in *Com. ex rel. Martocello v. Martocello,* 148 Pa. Superior Ct. 40 (1942): "This court has frequently held that an order for support 'is not to punish the respondent for his conduct, or misconduct, towards his wife and family, but is to secure such an allowance for their support as is reasonable having in view the property, income and earning capacity of the respondent and the condition in life of the family:' Com. ex rel. Fort v. Fort, 124 Pa. Superior Ct. 151, 152, 188 A. 416."

We therefore remand the case for further proceedings consistent with this opinion.