538 A.2d 1376

Michael F. CHESONIS

v.

Frank M. CHESONIS, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 18, 1987.

Filed March 23, 1988.

■■■■■■■■■■■■■■

Kenneth C. Myers, Reading, for appellant.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, McEWEN, OLSZEWSKI, MONTEMURO, POPOVICH and JOHNSON, JJ.

BROSKY, Judge:

This is an appeal from an order compelling appellant to pay $15.00 weekly towards appellee's college educational endeavor. Appellant presents two arguments for our consideration: (1) appellee has failed to meet his burden of proof to demonstrate a need for support; and (2) appellant should not be required to contribute to the college expense of an estranged child where there is no contribution by the child's mother and the expense would constitute a hardship. After careful consideration of the record and arguments advanced by the parties, we reverse the order of support.

At the time of the initiation of this proceeding, appellee was nineteen years of age and enrolled as a full-time student at Penn State University, Berks County. He was employed and worked approximately thirty-five hours a week with an average weekly net income of $110.00. Although his tuition is $1,123.00 per semester, he receives grants totalling $575.00 per term, leaving a balance of $548.00 to be paid per term. He testified to additional weekly expenses of: $30.00 room and board to his mother, $15.00 transportation costs, and $15.00 meal expenses. Appellee also pays a $365.00 per year car insurance expense and approximately $180.00 per semester for books.

Appellant's pay stubs show his bi-weekly net income to be $840.65. Appellant testified that he is currently working, yet had been unemployed at times prior to the support hearing. He admitted to an existing weekly obligation of $40.50 for the support of another child (appellee's sister), liabilities in excess of $53,000 to the Commonwealth of Pennsylvania for unpaid unemployment and sales taxes, and over $17,000 for employee withholding, taxes, debts of

over $17,000 attributable to a former wife (not appellee's mother), and a $23,000 mortgage.

Both parties maintain that they have had no contact in the last three years and appellee admits that he never discussed his educational plans with his father before enrolling in college. Upon this record, the trial court found that appellee had demonstrated a need for educational support and that appellant was capable of contributing to his son's college education without undue hardship.

■ The trial court correctly indicated in its opinion that consideration must be given to the financial situation and capacity of both parent and child in determining whether or not to order educational support. *Leonard v. Leonard,* 353 Pa.Super. 604, 510 A.2d 827 (1986), *Miller v. Miller,* 353 Pa.Super. 194, 509 A.2d 402 (1986). With respect to the parent's financial ability, any ordered support should be payable by the parent without imposing an undue hardship upon that parent. The trial court found that appellant was capable of paying support without undue hardship. We cannot agree.

■ During initial proceedings the hearing officer found appellee's weekly net income to be $120 and appellant's to be $165.52. Although the documentation contained in the record does not detail the exact specifications of this finding, it does appear to reflect that, taking financial obligations into account, the parties are not that disparately situated financially speaking. One breakdown of appellant's monthly expenses was contained in the record. It indicated monthly expenses of $1,794.37 and did not include such items as medical expenses, work tools and trade journals and publications. Appellant was earning a net pay of $840.65 every two weeks and it would appear that his entire income must be devoted to meet these monthly expenses. But, perhaps more troubling to the court is the fact that appellant is indebted to the extent of over $70,000 which he currently appears unable to satisfy in the least regard. Appellant has been held personally liable for unpaid taxes, sales and use taxes and employee withholding taxes of a

failed business with which he was previously associated. Appellant testified that he receives periodic statements regarding the tax liability, but that he has not been making any payments due to a lack of money. For the amount of his income, appellant's accumulated debt would appear financially disabling. Although the amount of support ordered by the trial court is not substantial, it could amount to the proverbial straw that breaks the camel's back. Further, because the amount is not substantial, appellee will not suffer greatly from its absence from his budget. Under the particular facts of this case we believe that if any court is to order appellant to contribute to the support of his son's college education it be the court of his own conscience. For these reasons, we reverse the order of support.[1]

Order reversed.

CIRILLO, President Judge, files a concurring opinion.

POPOVICH, J., concurs in the result.

CIRILLO, President Judge, concurring:

I write separately to respond to the majority's footnote concerning estrangement as a potential factor in determining the obligation of a parent to provide post-minority support for college-bound offspring. This issue has never been directly addressed by this court. The majority finds on the record before us that this issue need not be addressed because the economic facts are dispositive. While I agree that appellant was able to show undue financial hardship sufficient to justify our reversal of the trial court's support order for his nineteen year old son, I wish to go on record as supporting the inclusion of willful estrangement as a consideration in making such support awards.

1. Our decision today is based solely on our finding that the support order will create a hardship on the father in light of his woeful financial situation. We express no opinion in this decision as to whether estrangement relieves a parent of a duty to support a child who has reached majority.

Extending a duty of support beyond the age of majority is grounded in a recognition of the modern day importance of a college degree and a policy of judicial paternalism. This policy seeks to insure that children from broken homes are not arbitrarily denied an opportunity for such a degree because of the problems of their parents. All too often what parents would have done willingly had their relationship not deteriorated must, after the fact, be coerced for the benefit of their children. Emotionalism and bitterness displace reason, and it is indeed noble for us to step between warring parents to rescue their children's dreams. However, while with one hand we support the modern family ideal of helping to prepare our children through higher education, when these same adult children have repudiated a parent and we force that parent to endorse such behavior, we take away from another family ideal of even longer standing with the other: respect for one's parents. Since the strong policy of this Commonwealth is to support the family, we cannot abdicate our responsibility to promote the values inherent in that relationship. One of the primary values is basic respect for one's parents; another is the value of purposeful interaction to meet the needs of each family member. To order support where an adult child is willfully estranged from a parent is to judicially endorse that kind of behavior and to fail to recognize that, in all families, communication is basic to the ability to work through difficulties and reach compromise, if not harmony and understanding.

The two-tiered test used in this Commonwealth to determine the propriety of a post-majority support award for an adult child wishing to pursue post-secondary education purports to consider only the desire and ability of the child to do college work and the financial ability of the parents to contribute without undue hardship to that child's expenses in obtaining a degree. I suggest that in examining the totality of the circumstances presented in each of these cases that come before us for review, we look to see whether the petitioning adult child has made the decision to disassociate him or herself from the parent from whom

support is sought. Our court, in the exercise of our quasi-parental responsibility, should in such cases make it clear that such an adult child must accept the consequences of that decision and, as Judge Moss said in a 1980 Montgomery County case, "let the parties remain in the beds they have made for themselves." *Commonwealth ex rel. Wallace v. Simoes,* 19 Pa.D. & C.3d 614 (1980).

It seems clear that refusal on the part of an adult child to associate with a parent should preclude that child's ability to reach into that parent's pocket for funds to attend college. It is most certainly an "undue hardship" to compound a parent's loss of society, affection, respect and opportunity to guide by requiring a parent from whom an adult child is willfully estranged to support that child.

For the foregoing reasons I respectfully concur in the majority's holding.