618 A.2d 406

**Susan HYDE, Appellee,**

v.

**Lloyd HYDE, Appellant.**

Superior Court of Pennsylvania.

Submitted May 4, 1992.

Filed Nov. 6, 1992.

Reargument Denied Jan. 15, 1993.

Johnson, J., filed dissenting opinion.

**1. Husband and Wife ⊕278(1)**
 **Parent and Child ⊕3.1(8)**
 Right of children to be supported adequately cannot be bargained away by their parents in separation and property settlement agreement.

**2. Divorce ⊕306**
 Father could not contribute to child's college education without undue hardship to himself and two other children living with him, where, after payment of alimony, he had only $1,680 per month for support of himself and his two children.

**3. Divorce ⊕306**
 In determining mother's obligation to contribute to support of her two children living with their father and in determining whether father had continuing obligation to contribute to college education of third child, alimony paid by father to mother should have been treated as gross income to mother in calculating monthly net income. Rules Civ.Proc., Rule 1910.16–5(b), 42 Pa.C.S.A.

**4. Husband and Wife ⊕279(1)**
 There was no basis for disturbing hearing court's order requiring husband to pay interest at rate of seven and one-half percent per month on unpaid alimony, where terms of separation and property settlement agreement which established rate of interest on unpaid alimony were clear, record did not demonstrate that terms establishing rate of interest resulted from mutual mistake, and husband did not argue that rate of interest established by agreement was usurious.

———————

Michael J. Seymour, Bethal Park, for appellant.

John R. DeAngelis, Pittsburgh, for appellee.

Before WIEAND, JOHNSON and MONTGOMERY, JJ.

WIEAND, Judge:

The principal issue in this appeal is the consideration to be given to alimony payments in determining the amount of child support payments to be made by a divorced mother and father, both of whom have independent incomes.

Susan Hyde and Lloyd Hyde were married on August 13, 1970 and parented three children: Rebecca, age 19; Daniel, age 17; and Joshua, age 15.[1] Prior to the entry of a decree in divorce on February 1, 1988, the parties entered a separation and property settlement agreement. Pursuant to the terms thereof, custody of the three children was awarded to Susan. Lloyd, meanwhile, obligated himself to pay child support in the amount of five hundred ($500.00) dollars per month and alimony in the amount of one thousand eight hundred twenty ($1,820.00) dollars per month for a period of seventy-two (72) months. Subsequent to the divorce, the two younger children moved in with their father. Rebecca continues to live with her mother while not in residence at Westminster College, where she matriculates.

In November, 1989, Susan Hyde filed a petition seeking to hold her former husband in contempt of court for failing to comply with the terms of the property settlement agreement, which had been incorporated into the divorce decree. She also filed a petition in which she made an additional claim against her former husband for the educational costs being incurred by Rebecca.[2] On January 2, 1990, an order was entered directing Lloyd to pay four hundred ($400.00) dollars per month on account of Rebecca's college education. In September, 1990, Lloyd Hyde filed a petition for the support of the two children who were now living with him. He also asked the court to vacate the order for Rebecca's educational support. After a hearing in October, 1990, the court found Lloyd Hyde in contempt for failing to make alimony payments in full, determined the amount of alimony in arrears, vacated the order for the support of the two children who were now

1. These were the ages given at the time of the hearing in October, 1990.

2. The agreement contains no provision for the payment of college expenses for the children by either parent.

living with their father, gave credit for child support adjustments, and directed that Lloyd pay Susan the sum of $19,-664.06. The court also refused to vacate the order of $400.00 per month toward the cost of a college education for Rebecca and ordered Susan to pay $450.00 per month for the support of the two younger children. Lloyd appealed. He contends that in several respects the trial court abused its discretion.

Lloyd is the owner of a franchise known as "Servpro" which cleans and restores fire damaged buildings and contents. The court found his earnings to be $3500 per month. From this amount, he is required to pay alimony in the amount of $1,820.00 per month and educational support for Rebecca in the amount of four hundred ($400.00) dollars per month.

Susan is a working psychologist and is entered in the Ph.D. program at Indiana University of Pennsylvania. She has income, exclusive of alimony, in the amount of two thousand ($2,000.00) dollars per month. When this is added to the alimony received by Susan, it is clear that she has a cash flow of at least three thousand, eight hundred twenty ($3,820.00) dollars per month.[3] From this amount she contributes the sum of four hundred ($400.00) dollars per month to Rebecca's college education.[4]

It is a simple matter of mathematics to determine that Lloyd, after paying alimony and educational support as ordered by the court,[5] has available monthly the sum of twelve hundred eighty ($1,280.00) dollars for the support of himself and the two children who are living with him. Susan, on the

---

3. It is undisputed that Susan receives payments of six hundred ($600.00) dollars per month from a note assigned to her as part of the parties' property settlement agreement. Husband argues that this is in addition to wife's income of two thousand ($2,000.00) dollars per month. Although this was not the subject of a finding by the hearing court, there is some, albeit not conclusive, support in the record for husband's contention. If this is correct, then wife has an actual cash flow of four thousand, four hundred twenty ($4,420.00) dollars per month.

4. The parties stipulated that Rebecca's expenses were in the total amount of eight hundred ($800.00) dollars per month.

5. Lloyd is also required to pay medical expenses for the children and interest at the rate of 7½% per month on overdue payments of alimony.

other hand, has available monthly for the support of herself and the two children, after paying four hundred dollars for Rebecca's education, the sum of three thousand, four hundred twenty ($3,420.00) dollars.

In determining Susan's obligation to contribute to the support of her two children, the trial court excluded the monthly alimony which she received and found that her only income was two thousand ($2,000.00) dollars per month. In determining whether Lloyd had a continuing obligation to contribute to Rebecca's college education, however, the trial court considered his monthly income to be thirty-five hundred ($3,500.00) dollars. It is the failure either to reduce Lloyd's income by the amount of alimony which he pays or to increase Susan's income by the amount of alimony which she receives which has created the inequitable disparity between the parental obligations of Lloyd and Susan. Some of this disparity has also been brought about by the terms of the parties' agreement, and if Lloyd were the only victim of the disparate income, we would not be inclined to rescue him from the results of a bad bargain. In fact, however, the real victims are the two children who are presently living with him. Their right to be supported adequately cannot be bargained away by their parents. See: *Brown v. Hall*, 495 Pa. 635, 643 n. 11, 435 A.2d 859, 863 n. 11 (1981); *Travitzky v. Travitzky*, 369 Pa.Super. 65, 79 n. 6, 534 A.2d 1081, 1088 n. 6 (1987); *Oman v. Oman*, 333 Pa.Super. 356, 361, 482 A.2d 606, 609 (1984).

In *Steinmetz v. Steinmetz*, 381 Pa.Super. 440, 554 A.2d 83 (1989), a panel of the Superior Court considered a similar issue. It determined, under the circumstances of that case, that alimony payments should not be considered income to a wife-mother but that the father's available income should be reduced by such payments of alimony. The court was influenced by the fact that the wife-mother was dependent upon the alimony which she received to support herself. It concluded, therefore, that income derived by her from alimony payments should not be a source of support for her children. The Court's ruling, however appropriate to the facts of that case, as the Court realized, cannot be applied automatically to all

cases. Thus, the Court said specifically that alimony pay-
ments are not "automatically" to be included as income to the
wife.

█ The trial court, in the instant case, failed to follow the
teaching of *Steinmetz*, because it determined that alimony
payments should be excluded as income to Susan but should
not be excluded from that income to Lloyd which was available
for child support. This was error. In fact, of Lloyd's income
of $3,500.00 per month, the sum of $1,820.00 per month is
immediately earmarked as alimony to Susan. Thus, Lloyd has
available for the support of himself and his children only
$1,680.00 per month. This is approximately four hundred
($400.00) dollars per week and does not bespeak an ability to
contribute to Rebecca's college education without undue hard-
ship to Lloyd and the two children living with him. See:
*Bedford v. Bedford*, 386 Pa.Super. 349, 563 A.2d 102 (1989);
*Chesonis v. Chesonis*, 372 Pa.Super. 113, 538 A.2d 1376 (1988).

█ In fact, however, the holding in *Steinmetz v. Stein-
metz, supra*, has been superseded by the Rules of Civil
Procedure adopting the Support Guidelines. The monthly net
income of mother and father, for purposes of applying the
guidelines, is to be determined as set forth in Pa.R.C.P.
1910.16–5(b). It is there provided as follows:

**(b) Monthly Net Income.** The amount of support to be
awarded is based in large part upon the parties' monthly net
income. Monthly net income is determined by subtracting
only the following items from monthly gross income:

(1) federal, state, and local income taxes;

(2) F.I.C.A. payments and non-voluntary retirement pay-
ments;

(3) union dues;

(4) health insurance premiums for the benefit of the other
party or the children.

Monthly gross income is ordinarily based upon at least a
six-month average of all of a party's income. The term
"income" is defined by the support law, 23 Pa.C.S. § 4302,[6]

6. The provisions of 23 Pa.C.S. § 4302, in pertinent part, are as follows:

and includes income from any source. The statute lists many types of income including:

(1) wages, salaries, fees and commissions;

(2) income from business or dealings in property;

(3) interest, rents, royalties, and dividends;

(4) pensions and all forms of retirement;

(5) income from an interest in an estate or trust; and

(6) social security benefits, temporary and permanent disability benefits, workmen's compensation and unemployment compensation.

From this it is quite clear that alimony payments are not to be subtracted from gross income to determine net income available for child support. Alimony is not one of the items which are deductible from gross income to determine net income. On the other hand, gross income is defined generally as "income from any source" and is broad enough to include alimony payments. Thus, since alimony payments must be accounted for, they are counted as gross income to the receiving spouse.[7]

In the instant case, a fair and equitable result can best be achieved by including the alimony payments as monthly gross income to Susan. In this manner, her ability to contribute to the support of her children can most accurately be determined without depriving her of the benefit of the order requiring Lloyd to pay alimony. By requiring her to contribute to the support of the children who are now residing with Lloyd on

"**Income.**" Includes compensation for services, including, but not limited to, wages, salaries, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workmen's compensation and unemployment compensation.

7. We observe that alimony payments, if paid pursuant to court order, are also deemed income to the receiving spouse for income tax purposes.

the basis of the income which she receives from all sources, she will be able to benefit her children fairly and in keeping with the funds available to her. When she makes these contributions in accordance with the guideline formula, Lloyd should also be able to continue his payment of one-half of Rebecca's monthly expenses at college. In this manner, both parents will continue fully to be a sustaining force in the lives of all of their children. The alimony payments, then, will not be placed beyond the reach of the children's needs but will be available, as circumstances permit, to insure that the children are properly supported.

▎ Appellant also contends that the trial court erred when it required him to pay interest at the rate of 7½ percent per month on unpaid alimony and improperly apportioned his payments between educational expenses for his daughter and alimony for his former wife. However, the terms of the agreement which establish the rate of interest on unpaid alimony are clear,[8] and the record does not demonstrate that they are the result of mutual mistake. Moreover, the record does not disclose that the apportionment of payments by the Collection Department was improper or in violation of specific instructions by appellant. As such, there is no basis for disturbing the hearing court's computation of interest chargeable to appellant on alimony payments not made when due.

Reversed and remanded for proceedings consistent with the foregoing opinion. Jurisdiction is not retained.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting.

In this case, Father appeals from an order for child support. I completely agree with the Majority to the extent that it upholds the order of the trial court directing the parties' to equally share the cost of their daughter's college education. However, I am compelled to dissent since I would affirm the order of the trial court in its entirety.

8. Appellant has not argued that the rate of interest established by the agreement is usurious, and with respect thereto we express no opinion.

The Majority defines the primary issue in this appeal as whether the trial court erred in excluding alimony payments received by Mother from her income in calculating the amount of her child support payments due to Father. The Majority determines that the trial court erred in its calculation of Mother's monthly income. I disagree.

To include alimony received in Mother's monthly income, the Majority relies upon Rule 1910.16–5(b) of the Pennsylvania Rules of Civil Procedure. Subsection (b) of this Rule states, in its entirety:

**(b) Monthly Net Income.** The amount of support to be awarded is based in large part upon the parties monthly net income. Monthly net income is determined by subtracting only the following items from monthly gross income:

(1) federal, state, and local income taxes;

(2) F.I.C.A. payments and non-voluntary retirement payments;

(3) union dues;

(4) health insurance premiums for the benefit of the other party or the children.

Monthly gross income is ordinarily based upon at least a six-month average of all of a party's income. The term "income" is defined in support law, 23 Pa.C.S. § 4302, and includes income from any source. The statute lists many types of income including:

(1) wages, salaries, fees and commissions;

(2) income from business or dealings in property;

(3) interest, rents, royalties, and dividends;

(4) pensions and all forms of retirement;

(5) income from an interest in an estate or trust; and

(6) social security benefits, temporary and permanent disability benefits, workmen's compensation and unemployment compensation.

From reference to Rule 1910.16–5(b), the Majority correctly states that the Rule does not provide for the deduction of alimony payments from Father's gross income to calculate his net income for child support purposes. The Rule clearly

provides *only* for the deduction of various taxes, retirement contributions, health insurance payments, and union dues.

The Majority then defines gross "income" as a term "broad enough to include alimony payments" in Mother's income for the purpose of calculating child support payments. I must disagree. The term "income" is defined specifically for support law in 23 Pa.C.S. § 4302 as:

"Income." Includes compensation for services, including, but not limited to, wages, salaries, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workmen's compensation and unemployment compensation.

Our legislature does not include alimony in the specific examples used to illustrate what constitutes gross income. This statute specifically provides that "compensation for services" is included in the definition of "income" for support purposes. Rather than serving as compensation to a spouse for services, as contemplated for "income" under 23 Pa.C.S. § 4302, our Court has considered alimony to be rehabilitative. Alimony assures that the needs of the dependent spouse are met until such time as the dependent spouse is able to adjust to life without financial support from the former spouse. *McNulty v. McNulty*, 347 Pa.Super. 363, 500 A.2d 876 (1985). While the term "income", as defined for support purposes, may encompass many types of remuneration, I am unwilling to usurp the legislative function and include alimony in the definition of "income" under 23 Pa.C.S. § 4302. The Majority relies upon the inclusion of alimony in gross income for income tax purposes as support for the proposition that alimony should be included in the calculation of Mother's gross income. Rule 1910.16-5(b), however, specifically refers to "income"

only as it is defined by support law, 23 Pa.C.S. § 4302. Absent statutory authority, I will not presume the term "income" to be so all-inclusive that it must necessarily include alimony.

This Court has recently addressed this identical issue in *Steinmetz v. Steinmetz*, 381 Pa.Super. 440, 554 A.2d 83 (1989). There, we stated that monies allocated as alimony should be excluded from the resources available for child support for both supporting and dependent spouses. *Id.* at 449, 554 A.2d at 86–87. The Majority correctly notes that our holding in *Steinmetz* was superseded by Pa.R.C.P. 1910.16–5(b) to the extent that money allocated for alimony payments may not be excluded when calculating the payor spouse's net income. Nonetheless, I am unable to agree with the Majority's conclusion that Rule 1910.16(b) invalidates the entire holding of *Steinmetz*. There, we specifically stated:

> Because alimony is specifically designated to assist the dependent spouse in overcoming the economic effects of the dissolution of the marriage and not for the support of the children, the inclusion of the alimony award would create the appearance of an inflated income from which the child support obligation would be drawn and would undermine the purpose for which alimony is awarded.

*Steinmetz* at 448, 554 A.2d at 86. This statement is the viable standard under which we must assess the actions of the trial court. Nothing contained in Rule 1910.16–5(b) acts to supersede this long-held understanding as to the purpose of alimony.

In the present case, the trial court applied the appropriate standards to arrive at the income available for child support for both parties. The trial court included the money allocated for alimony payments in Father's net income, as statutorily mandated under Rule 1910.16–5(b). The trial court also excluded the amount of alimony payments received from Mother's income for the purposes of calculating the child support which Mother must pay, which is the proper procedure, under *Steinmetz*.

I am unable to agree with the Majority that it is within the purview of this Court to "rescue" parties from "the results of a bad bargain". Majority opinion, pp. 417–421. Our function, as an appellate court, is not to fashion a more "fair and equitable result." Majority opinion, p. 421. An order for child support must be affirmed unless a clear abuse of discretion on the part of the trial court has been proven by clear and convincing evidence. *Oeler by Gross v. Oeler,* 527 Pa. 532, 594 A.2d 649 (1991). I am unable to conclude that there has been an abuse of discretion on the part of the trial court, since the order in question complies with the existing law.

The Majority, in footnote 8, p. 422, indicates that it expresses no opinion on whether the interest rate of seven and one-half percent as established in the agreement is usurious. Since the clear implication of the footnote is that such a rate *might be* usurious, and since material contained in footnotes in one opinion sometimes surface as "law" in a later opinion, I feel compelled to distance myself from any such implication.

The parties, in this case, were represented by counsel and clearly provided for a specific rate of interest to be paid by Father in the event of a default in the payment of alimony. Property Settlement Agreement, January 21, 1988 at 14. Where contract provisions anticipate non-payment of money due, and provide for a specific rate of interest, they will be upheld. *Daset Mining Corp. v. Industrial Fuels Corp.,* 326 Pa.Super. 14, 36, 473 A.2d 584, 595 (1984). Only where parties fail to provide for the rate of interest, in the event of breach of contract, will the "legal rate" of interest be applied by the courts. *Daset Mining Corp.* at 39, 473 A.2d at 597; Restatement (Second) of Contracts § 354, comment a.

In the present case, the parties, on the advice of counsel, agreed that if Father were to breach his duty to pay alimony, interest of seven and one-half percent per month would be paid to Mother on all unpaid amounts of alimony. Father does not contend that the rate of interest as provided in the property settlement agreement is usurious or illegal. This issue was not raised in the trial court. The Majority raises this issue *sua sponte,* albeit by way of footnote. *But see*

Pa.R.A.P. 302(a). This Court could not consider the issue posed in the Majority's footnote 8 simply because it is outside the scope of proper appellate review. *Estep v. Estep*, 508 Pa. 623, 626–627, 500 A.2d 418, 419 (1985) *citing Wiegand v. Wiegand*, 461 Pa. 482, 485, 337 A.2d 256, 257 (1975).

On this appeal, Father asserts that he misunderstood the interest provision which appears in the property settlement agreement and that the trial court should have considered Father's understanding of the interest term in the agreement. Father also contends that the delinquent payments for alimony and the educational support for his daughter should have been designated solely as payments due for educational support. In that way, no interest could be assessed under the property settlement agreement. I find no merit in these arguments. I am at a loss in understanding the purpose in the Majority alluding to the possibility of usury arising on these facts.

The trial court, in this case, correctly articulated and applied the law with respect to property settlement agreements. Property settlement agreements will be interpreted in accordance with the same rules of law that apply to the interpretation of contracts in general. *VanKirk v. VanKirk*, 336 Pa.Super. 502, 485 A.2d 1194 (1984). When construing agreements with clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties understanding. *McMahon v. McMahon*, 417 Pa.Super. 592, 598, 612 A.2d 1360, 1363 (1992). Here, the clear and unambiguous language of this property settlement agreement provides for payment of the agreed upon interest rate in the event of default by Father. Father entered into this agreement on advice of counsel and does not claim that the agreement was the product of fraud, duress or coercion. Now that Father has defaulted on his duty to pay alimony and educational expenses, he cannot offer parole evidence to explain how he would interpret the unambiguous interest provision which appears on the face of the agreement. *Frank v. Frank*, 402 Pa.Super. 458, 587 A.2d 340 (1991). Moreover, Father offers no authority, nor do we discern any, for the proposition that

he should be permitted to allocate, from the $13,240.00 he owes in arrearages, how much of that sum should be designated as alimony or as educational expense, so that he can avoid paying interest on unpaid alimony. I cannot conclude that the trial court abused its discretion by enforcing the clear and unambiguous contract provisions. I would, therefore, affirm the order of the trial court.

Accordingly, I must respectfully dissent.