2000 SD 58

**Gayle R. PETERSON, Plaintiff and Appellee,**

v.

**David W. PETERSON, Defendant and Appellant.**

**No. 20979.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 1999.

Reassigned March 6, 2000.

Decided May 3, 2000.

Wanda Howey–Fox of Harmelink & Fox Law Office, Yankton, for plaintiff and appellee.

Craig A. Kennedy of Doyle & Kennedy, Yankton, for defendant and appellant.

SABERS, Justice (on reassignment).

[¶ 1.] In this divorce case, the trial court ordered David to pay $600 monthly alimony to Gayle. David appeals and we affirm. Additionally, the referee determined that alimony was not to be deducted from the income of payor Father nor included in the income of the payee Mother for the purpose of determining child support. The trial court affirmed. We reverse and remand and hold that, for the purpose of determining child support, alimony payments are deducted from the payor's income and included in the payee's income.

## FACTS

[¶ 2.] David and Gayle Peterson were married in 1979 in Pierre where they lived and worked most of their marriage. The year before the break-up of the marriage, David was working for the Department of Human Services earning approximately $34,259 per year and Gayle was working for the Department of Revenue earning approximately $22,107 per year.

[¶ 3.] In 1996, David's position was moved to Yankton and he was required to move to keep his job. Gayle quit her own job to move to Yankton with David. After the move, the parties began to experience problems in their marriage. Gayle was unable to obtain new employment at a salary level commensurate with her prior earnings. David became withdrawn and threatening. He would pace or sit in the dark all night in a recliner in the living room. He also purchased a handgun and at some point told Gayle that the medication he was taking could make him homicidal. In addition, he began to drink in Gayle's presence, despite her past alcohol problems and nine years of sobriety. Tensions were exacerbated with Gayle's discovery that David kept secret post office boxes in Pierre and Yankton for the receipt of pornographic materials that she found repulsive.

[¶ 4.] As a result of David's erratic behavior, Gayle eventually moved to a separate bedroom in the basement of the marital residence where she claimed to lie awake at night in fear of some aggressive act by David. David, who was in counseling at this point, abruptly announced that the marriage was over and that he wanted to start a new life. Gayle filed for divorce in May of 1997. After commencement of the divorce action, the parties sold their marital home and Gayle moved to an apartment in Yankton. David moved into a duplex along with the parties' sixteen-year-old daughter.

[¶ 5.] The trial was held in September of 1998. The trial court granted Gayle a divorce on the grounds of extreme mental cruelty and awarded her permanent alimony from David in the amount of $600 per month. It awarded custody of the parties' minor child to David subject to Gayle's visitation rights and ordered Gayle to pay child support to David in the amount of $297 per month, which includes $70 per month for Gayle's share of the child's medical insurance. David appeals raising two issues.

[¶ 6.] **1. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING ALIMONY.**

[¶ 7.] "A trial court is vested with discretion in awarding alimony and its decision will not be disturbed unless it clearly appears the trial court abused its discretion." *Evans v. Evans*, 1997 SD 16, ¶ 31, 559 N.W.2d 240, 247 (citation omitted).

[¶ 8.] David argues the trial court abused its discretion in awarding alimony because it merely recited the factors considered in awarding alimony without explaining how its findings were related to Gayle's need for alimony, the duration, or the amount of the alimony awarded.

[¶ 9.] In awarding permanent alimony, the trial court must consider six factors:

(1) the length of the marriage;

(2) the respective earning capacity of the parties;

(3) their respective financial condition after the property division;

(4) their respective age, health and physical condition;

(5) their station in life or social standing; and

(6) the relative fault in the termination of the marriage.

*Jones v. Jones*, 1996 SD 2, ¶ 21, 542 N.W.2d 119, 124 (citations omitted).

[¶ 10.] The parties were married for 18 years. David, who has a college degree, earns over $30,000 per year while Gayle, who has a high school education, earns $16,000 per year. The marital property was divided equally with neither party receiving substantial income-producing assets except their retirement accounts. Gayle is 48 years old and David is 46. Gayle suffers from high blood pressure and had a complete hysterectomy due to cervical cancer. While they enjoyed an upper-middle class lifestyle in Pierre, they live a much more constrained lifestyle in Yankton. Gayle lives in low-income housing and is barely able to keep up with her obligations. David was at fault for the dissolution of the marriage.

[¶ 11.] Based on all the facts and circumstances, there is no showing that the trial court abused its discretion in awarding permanent alimony to Gayle of $600 per month. We affirm.

[¶ 12.] **2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THE CHILD SUPPORT OBLIGATION.**

[¶ 13.] In reviewing the trial court's determination of child support, we ascertain "whether the trial court abused its discretion in setting the support." *Grode v. Grode*, 1996 SD 15, ¶ 7, 543 N.W.2d 795, 800 (citation omitted). David argues that the trial court abused its discretion in determining the amount of support because it:

(1) Failed to grant him a deduction from income for the amount of the alimony payments to Gayle; and

(2) Failed to include the alimony payments to Gayle as part of her monthly income.

[¶ 14.] *1. Alimony payments are deducted from the payor's income for child support purposes.*

■ [¶ 15.] South Dakota uses an "income shares method" to establish child support.

Under the income shares method[,] a child support figure is established by adding together the [net monthly] income of both parents and [by] using [a statutory] chart to determine what the proper amount of support is for that income level. The child support is then allocated between ... both parents in proportion to their relative [net monthly] incomes, with the payment being made by the non-custodial parent to the custodial parent.

Report of the South Dakota Commission on Child Support 8 (1988). *See also* SDCL 25–7–6.2 (support obligation schedule).

[¶ 16.] The deductions allowed from gross monthly income to arrive at each parent's net monthly income for purposes of calculating child support are listed in SDCL 25–7–6.7. Among the allowable deductions are "[p]ayments made on *other* support and maintenance orders." SDCL 25–7–6.7(6) (emphasis added). Since alimony is a payment for the support and maintenance of a dependent spouse, it is deducted from the payor's gross monthly income as another support and maintenance order. *See In re Marriage of Russell*, 511 N.W.2d 890, 891–92 (Iowa Ct.App. 1993) (holding it was an abuse of discretion to fail to deduct the amount of alimony paid by father to mother when calculating child support). Because the trial court did not allow David a deduction for alimony here, it abused its discretion in setting the child support.

**[¶ 17.]** *(2) Alimony payments are included as income to the payee for child support purposes.*

■ **[¶ 18.]** "Income" is not specifically defined within SDCL ch. 25–7. However, it is defined under SDCL 25–7A–1(8) as "any form of payment to a person, regardless of source . . . ."

**[¶ 19.]** SDCL 25–7–6.3 lists several types of payments and benefits that have been determined to be included as "gross income" for purposes of calculating child support. Under this statute, disability payments, worker's compensation benefits, social security payments, veteran benefits and payments received under a retirement or pension program are considered income. Monies "derived from investment of capital assets" are also considered as income. *Id.*

**[¶ 20.]** SDCL 25–7–6.3 was enacted in 1989. Its predecessor, SDCL 25–7–7, contained nearly identical language.[1] Both statutes set forth a list of income to be *included* when calculating child support. Under SDCL 25–7–7, the relevant sentence provided: "[t]he monthly gross income of the obligor includes amounts received from the following sources . . . ." Under the current statute, SDCL 25–7–6.3, the sentence provides: "[t]he monthly gross income of each parent includes amounts received from the following

sources . . . ." Obviously, only a minor stylistic change was made. Therefore, our prior analysis of this portion of SDCL 25–7–7 is still relevant.

**[¶ 21.]** In 1988, we included, in income, non-garnishable military pay allowances when calculating child support and alimony. *Hautala v. Hautala,* 417 N.W.2d 879, 881 (S.D.1988). We determined that "nothing in this section of the statute indicates that the listing of general categories of income is exclusive. The use of the word 'include' suggests a legislative intent to encompass other, unlisted sources of income." Id. *See also Gross v. Gross,* 355 N.W.2d 4, 9 (S.D.1984) (determining that a pending inheritance award was included in the calculation of child support).[2]

■ **[¶ 22.]** In enacting the current statute, SDCL 25–7–6.3, the 1989 legislature did not expressly include non-garnishable military pay allowances or inheritance awards as a "source of income." In fact, the list of "sources of income" did not substantially change at all. This would imply that the results in *Hautala* or *Gross* were not legislatively affected because the list was not intended to be exhaustive. The language of SDCL 25–7–6.6 does not make the list exhaustive nor does it include language which would alter our decisions in *Hautala* or *Gross.* The legisla-

---

1. SDCL 25–7–7 provided, in part:
   The obligor's monthly net income shall be determined by his gross income less allowable deductions, as set forth herein.
   The monthly gross income of the obligor includes amounts received from the following sources:
   (1) Compensation paid to an employee for personal services, whether called salary, wages, commissions, bonus or other designations;
   (2) Gain or profit from a business or profession, farming included, usually called self-employment income;
   (3) Periodic payments from pensions or retirement programs, including social security or veteran's benefits, disability payments or insurance contracts;
   (4) Interest, dividends, rentals, royalties or other gain derived from investment of capital assets;

   (5) Gain from the sale, trade or conversion of capital assets;
   (6) Unemployment insurance benefits; or
   (7) Worker's compensation benefits.
   If the income of the obligor is derived from seasonal employment, or received in payments other than regular, recurring payments, such income shall be annualized to determine a monthly average income.

2. Other jurisdictions have determined that the unearned income of personal injury awards and severance packages are included as "gross income" for child support calculations. *See Sommer v. Sommer,* 108 Wis.2d 586, 323 N.W.2d 144, 148 (App.1982); *Gohde v. Gohde,* 181 Wis.2d 770, 512 N.W.2d 199, 201–02 (App.1993) respectively.

ture could have made the list exhaustive, but it chose not to. Consequently, we conclude that the legislature embraced our decision that this list is not exhaustive.

[¶ 23.] SDCL 25–7–6.6 also supports our determination that alimony is income. Under SDCL 25–7–6.6, any source of income that must be reported on a federal income tax return is considered to be "gross income." This statute is not limited to net profits or losses associated with a parent's business. Rather, the statute is intended to capture *all* income, earned and unearned, that parents report on their federal income tax reports and to apply that income in child support calculations. In other words, the legislature wants the parents to report *all* income, regardless of source, as shown by the phrase "or other sources." The logic is obvious: parents submit *all* their income and the judicial system, not the parents, determines what deductions may be taken under SDCL 25–7–6.7. Thus, the legislative act logically and correctly attempted to circumvent any "creative accounting" in support actions.

[¶ 24.] Pursuant to SDCL 25–7–6.6, gross income is determined, in part, by what is reported on the parents' federal income tax return. The federal income tax statutes define "gross income" broadly to include "all income from whatever source derived ...." IRC § 61(a). The statute specifically includes "alimony and separate maintenance payments" as "gross income." IRC § 61(a)(8). Clearly, the payee must report alimony as income on a federal income tax return. Therefore, it is included in the payee's gross income under SDCL 25–7–6.6.

[¶ 25.] Other jurisdictions have also determined that the receipt of alimony payments is considered income for child support calculations. In *Hyde v. Hyde*, 421 Pa.Super. 415, 618 A.2d 406, 409 (1992), the Pennsylvania Superior Court determined that alimony payments were to be included as gross income. In its analysis, the court first recognized that gross income was defined broadly as "income from

any source." Second, it noted that "alimony payments, if paid pursuant to court order, are also deemed income to the receiving spouse for income tax purposes." *See also King v. King*, 734 So.2d 470, 471 (Fla.Ct.App.1999) (holding that, based on a statutory change, the trial court properly "deducted from the husband's income, and added to the wife's income, spousal support paid pursuant to court order ....").

[¶ 26.] In order to properly calculate child support, *all* of the monies available for the support of both parents must be considered. A contemporaneous support order of permanent alimony is taxable income to Gayle that will be available to her until she either remarries or dies. Under either SDCL 25–7–6.3 or SDCL 25–7–6.6, this income is included with her other income to compute her gross income. If Gayle were permitted to exclude the permanent alimony payments from the child support calculations, it would improperly place available income beyond the reach of her child's needs.

[¶ 27.] Accordingly, we reverse the amount of child support and remand for proceedings consistent with this opinion.

[¶ 28.] MILLER, Chief Justice, and GILBERTSON, Justice, concur.

[¶ 29.] AMUNDSON and KONENKAMP, Justices, concur in part and dissent in part.

AMUNDSON, Justice (concurring in part and dissenting in part).

[¶ 30.] I concur with the majority's holding that the trial court did not abuse its discretion in its award of alimony to Gayle. I also concur with the majority's holding that, in calculating child support, the trial court abused its discretion in failing to allow David a deduction from his gross monthly income for the amount of his monthly alimony payments. However, I dissent from the majority's holding that, in calculating child support, Gayle must in-

clude the monthly alimony payments she receives in her gross monthly income.

[¶ 31.] SDCL 25–7–6.3 lists what should be included in gross monthly income to calculate child support. The statute provides:

The monthly net income of each parent shall be determined by his gross income less allowable deductions, as set forth herein. The monthly gross income of each parent includes amounts received from the following sources:

(1) Compensation paid to an employee for personal services, whether salary, wages, commissions, bonus or otherwise designated;

(2) Self-employment income including gain, profit or loss from a business, farm or profession;

(3) Periodic payments from pensions or retirement programs, including social security or veteran's benefits, disability payments or insurance contracts;

(4) Interest, dividends, rentals, royalties or other gain derived from investment of capital assets;

(5) Gain or loss from the sale, trade or conversion of capital assets;

(6) Unemployment insurance benefits; and

(7) Worker's compensation benefits.

If the income of the parents is derived from seasonal employment, or received in payments other than regular, recurring payments, such income shall be annualized to determine a monthly average income.

Notable by its absence from this list is alimony. Thus, alimony should not be included in gross monthly income in calculating child support. *See Engelhart v. Kramer*, 1997 SD 124, ¶ 18, 570 N.W.2d 550, 554 (it is a general rule of statutory construction that the expression of one thing is the exclusion of another).

[¶ 32.] The majority relies upon a general definition of "income" in SDCL 25–7A–1(8) in order to include alimony in gross monthly income. However, we are not here concerned with the *collection* of child support which is the purpose of SDCL ch 25–7A and its definitions. *See* SDCL 25–7A–1 (terms used in *"this chapter"* mean ....) The issue here is the *calculation* of child support. SDCL 25–7–6.3 lists what should be included in gross monthly income for this specific purpose. *See Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 295 (S.D.1982)(specific statute controls a general statute).

[¶ 33.] The majority submits our holdings in *Hautala v. Hautala*, 417 N.W.2d 879 (S.D.1988) and *Gross v. Gross*, 355 N.W.2d 4 (S.D.1984) expanded the sources of income for calculating child support beyond those listed in SDCL 25–7–6.3. Therefore, a review of *Hautala* and *Gross* is appropriate. As the majority states, in *Hautala*, we considered whether certain military pay allowances constituted income in calculating child support. We held that they did. However, the majority incorrectly submits that we reached that conclusion on the basis that SDCL 25–7–7 (the predecessor to current SDCL 25–7–6.3) provided a non-exclusive list of sources of income. That is not accurate. In reality, we looked to the sources of income that *were* listed in the statute and concluded that the military pay allowances fell under the category of, " '(1) *Compensation* paid to an employee for personal services, whether called salary, wages, commissions, bonus *or other designations.*' " *Hautala*, 417 N.W.2d at 881 (emphasis original)(quoting SDCL 25–7–7). It is true that the author of *Hautala* mentioned in the decision that, "[t]he use of the word 'include' [in SDCL 25–7–7] suggests a legislative intent to encompass other, unlisted sources of income." *Hautala*, 417 N.W.2d at 881. However, it must be noted that this gratuitous observation was offered without benefit of analysis, citation or reasoning and that it formed no part of the substantive rationale for our decision. As such, it was nothing more than dicta on which the current majority now rests its holding.

[¶ 34.] The majority's reliance on *Gross* is also troubling. The majority suggests we held in *Gross* that an inheritance award should be included as income in calculating child support. *See opinion* at p. 72. In fact, we reached no such holding. *Gross* actually predates the enactment of *any* statutory guidelines for calculating child support and was decided at a time when child support was based upon, "the reasonable needs of the child . . . and the payor's financial situation, *i.e.*, ability to pay." *Gross*, 355 N.W.2d at 7. Our real holding in *Gross* was that an inheritance award constituted a substantial change in circumstances warranting *modification* of a previous child support award. There is nothing whatsoever in the decision to support the view that the sources of income for calculating child support under the current guidelines may be expanded beyond those listed in SDCL 25–7–6.3.

[¶ 35.] The majority also submits that SDCL 25–7–6.6 supports the determination that alimony is income for purposes of calculating child support. Without quoting the statute, the majority conclusively asserts, "[u]under SDCL 25–7–6.6, any source of income that must be reported on a federal income tax return is considered to be 'gross income.'" *See opinion* at p. 72. A simple reading of the statute makes clear it says no such thing. SDCL 25–7–6.6 provides:

> Gross income from a business, profession, farming, rentals, royalties, estates, trusts or other sources, *are the net profits or gain, or net losses shown on any or all schedules* filed as part of the parents' federal income tax returns or as part of any federal income tax returns for any business with which he is associated, except that the court may allow or disallow deductions for federal income taxation purposes which do not require the expenditure of cash, including, but not limited to, depreciation or depletion allowances, and may further consider the extent to which household expenses, automobile expenses, and related items

are deductible or partially deductible for income tax purposes. In the event a court disallows depreciation, it may consider necessary capital expenditures which enhance the parent's current income for child support purposes. (emphasis added).

[¶ 36.] Nothing in this language defines "gross income" as, "any source of income that must be reported on a federal tax return ." The plain language of the statute defines "gross income" as, "net profits or gain, or net losses shown on any or all schedules . . . ." SDCL 25–7–6.6. Certainly, alimony is not a "profit" or "loss" nor is it reported on a schedule. Thus, in no manner does SDCL 25–7–6.6 include alimony in gross monthly income for purposes of calculating child support.

[¶ 37.] Finally, the majority concludes that, "[i]f Gayle were permitted to exclude the permanent alimony payments from the child support calculations, it would improperly place available income beyond the reach of her child's needs." *See supra* at 73. While the majority's concern with the needs of the child is laudable, it ignores that, even before calculating child support, the trial court considered the financial situation of the parties and their earning capacity and determined that Gayle needed $600 per month alimony for her own support and maintenance. By law, this sum can be used for no purpose other than her support. *See Urban v. Urban*, 1998 SD 29, ¶ 7, 576 N.W.2d 873, 875 (alimony is an allowance for support and maintenance with its *sole object* the provision of food, clothing, habitation and other necessaries for the support of a spouse). Including the alimony in Gayle's gross monthly income increases her child support obligation and indirectly results in her use of funds deemed necessary for her own support for child support. In short, Gayle will be making her child support payments to David out of the spousal support payments that she receives from him. This not only defies logic and common sense but violates

the requirement that alimony be used only for the support of the recipient spouse.

[¶ 38.] The exclusion of alimony as a factor in setting child support by allowing the obligor to deduct the payments from gross monthly income and by not requiring the obligee to include them in gross monthly income would avoid the above result. Moreover, it would meet the needs of the parties and the child as determined by the trial court. In this case, Gayle would receive the $600 per month alimony the trial court has deemed necessary for her own support and child support would be calculated according to the remaining funds the trial court knew would be available for that purpose. The majority's decision funnels funds deemed necessary for Gayle's support back to David in the form of child support, a trading of payments fairly characterized as "robbing Peter to pay Paul."[3] Our obligation is to interpret the law in a manner avoiding rather than creating such absurdities. *See City of Sioux Falls v. Ewoldt,* 1997 SD 106, ¶ 17, 568 N.W.2d 764, 768 (statutes to be construed in manner avoiding strained, impractical or absurd result.) For that reason, I dissent.

[¶ 39.] I am authorized to state that Justice KONENKAMP joins in this concurrence in part and dissent in part.

---

**3.** In fact, since alimony is calculated according to the earning capacity and financial condition of each party (*Jones v. Jones,* 1996 SD 2, ¶ 21, 542 N.W.2d 119, 124) and since Gayle will now be in a worse financial condition as a result of her increased child support obligation, the majority should reverse and remand the alimony award for recalculation in light of her increased financial burden.