2003 SD 146

**Terri Holts SCHABAUER, Plaintiff and Appellee,**

v.

**Alexander Michael Alois SCHABAUER, Defendant and Appellant.**

No. 22637.

Supreme Court of South Dakota.

Considered on Briefs Oct. 6, 2003.

Decided Dec. 17, 2003.

Linda Lea Viken of Viken Law Firm, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

Patricia A. Meyers and Jeremiah Luebbe of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, South Dakota, Attorneys for defendant and appellant.

MEIERHENRY, Justice.

[¶ 1.] Alexander Schabauer (Alex) appeals the alimony provisions in his divorce decree from Terri Schabauer (Terri). We reverse and remand.

## FACTS

[¶ 2.] Alex and Terri were married in 1989 and subsequently had two children, now ages nine and eleven. For most of the marriage, the couple lived in Rapid City where Alex worked as a cardiologist specializing in vascular medicine. Terri served primarily as a homemaker and mother although she did have some intermittent part-time employment as a social worker.

[¶ 3.] As time went on, the demands of Alex's heavy patient load began to take a toll on his time and his marriage. Alex eventually hired a nurse practitioner to assist him in his work, but training her only increased the demands on his time. Moreover, the time Alex spent with the assistant and his wishes to socialize and spend time with her outside of work caused Terri to suspect that they were having an affair.

[¶ 4.] In late 2001, the parties separated and Terri commenced a separate maintenance action against Alex. Alex counterclaimed for divorce. The case was tried on September 5 and 6, 2002. On September 26, the trial court entered findings of fact, conclusions of law and a divorce decree granting Terri a divorce on the grounds of extreme cruelty. The parties entered into a shared parenting arrangement under SDCL 25–7–6.14[1] and the divorce decree imposed a net monthly child support obligation on Alex of $1,473 including tuition for private school and daycare expenses for a YMCA program. The marital property was evenly distributed and each party was awarded assets valued at $222,330. As part of the property distribution, the

1. With regard to shared parenting, SDCL 25–7–6.14 provides in pertinent part:

[S]hared responsibility means a parenting plan whereby each parent provides a suitable home for the child of the parties, the court order allows the child to spend at least one hundred twenty days in a calendar year in each home, and the parents share the duties, responsibilities, and expenses of parenting.

marital home was to be sold and the first $134,335 in net sale proceeds was to be awarded to Terri. Remaining proceeds were to be divided evenly between the parties. The divorce decree also contained the following provision on alimony: "that [Alex] shall pay [Terri] $2,450.00 a month alimony for twelve years unless [Terri] shall sooner remarry or die[.]" Alex appeals.

## ISSUE

[¶ 5.] **Did the trial court abuse its discretion in its alimony award?**

[¶ 6.] Alex argues that the trial court erred in its alimony award. The standards for reviewing alimony awards are well established:

> Our standard of review for the trial court's alimony determination is abuse of discretion. "In determining whether there was an abuse of discretion, we ask, 'whether a judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion'." We will not set aside the trial court's findings of fact unless they are clearly erroneous.

\* \* \*

A party requesting alimony has the burden of proving [a] need for support and that [a] former spouse "has sufficient means and abilities to provide for part or all of that need." The factors that must be considered in determining the need for, amount and duration of alimony are: (1) length of the marriage; (2) respective earning capacity of the parties; (3) their respective age, health and physical condition; (4) their station in life or social standing; and (5) relative fault in the divorce.

*Dejong v. Dejong*, 2003 SD 77, ¶¶ 5–7, 666 N.W.2d 464, 467–68 (citations omitted).

[¶ 7.] The trial court entered the following findings on the factors applicable to determining alimony:

*Length of the Marriage*

[¶ 8.] The court found that the parties were married for thirteen years and were in an exclusive dating relationship for a number of years before that.

*Respective Earning Capacity of the Parties*

[¶ 9.] The court found that, as a doctor, Alex generated annual income of a quarter of a million dollars or more. In addition, the court found that Alex was the beneficiary of significant family investments held by his parents over which he had no control. The court declined to treat these investments as marital property subject to division.

[¶ 10.] The court found that Terri, with her master's degree in social work and her minor in archeology, was capable of earning less than one-fifth of the income earned by Alex. The record reflects that, in the fall of 2001, Terri began working for the State Archeology Research Center for $9.25 an hour or a gross of approximately $19,240 per year.

*The Age, Health and Physical Condition of the Parties*

[¶ 11.] The record reflects that both parties are approximately thirty-seven years of age. The court found that although both parties had minor ailments or disabilities, they were not factors affecting the alimony award.

*The Parties' Station in Life or Social Standing*

[¶ 12.] The court found that the parties lived in a marital home valued at a quarter of a million dollars and that their standard of living had steadily increased with their income. The court found maintenance of Terri's standard of living an important factor in the alimony award observing that,

unless a substantial award was made, Terri would be unable to maintain any semblance of her former lifestyle and that her declining lifestyle would be "readily apparent to the children."

### The Parties' Relative Fault
### in the Divorce

[¶ 13.] Fault was also a consideration in the alimony award. The trial court found Alex at fault in the breakdown of the marital relationship based upon the low priority he placed on the marriage and family life and based upon his inability or unwillingness to change. Although the trial court did not find any infidelity on Alex's part, it did find that, in essence, he abandoned the marriage by his course of conduct and with actions that raised a reasonable suspicion of marital misconduct.

[¶ 14.] There is ample evidentiary support in the record for all of the trial court's findings of fact. The findings concerning the length of the marriage, the respective earning capacity of the parties, the maintenance of their stations in life or social standing and their relative fault in the termination of the marriage support the award of alimony to Terri. Alex argues that an abuse of discretion is established when Terri's alimony is compared with awards in similar cases. However, when considering alimony awards, we review each case on its own facts and will not reverse absent an abuse of discretion. *Johnson v. Johnson,* 471 N.W.2d 156, 162 (S.D.1991).

[¶ 15.] Alex argues that the following finding of fact establishes that the trial court impermissibly awarded alimony as a form of child support:

Relationship between Alimony and Child Support. This is not a standard or factor which has been addressed by South Dakota decisions directly. However as a matter of fiscal reality, it is an extremely important factor. The statutes pertaining to child support particularly address greater than guideline income by providing that the Court shall set support at an appropriate level considering the actual needs and standards of living of the children. The Court finds that either a significant alimony award or a substantial child support deviation is necessary for [Terri] to meet the childrens' needs and maintain the lifestyle to which they are accustomed and which they will readily enjoy with [Alex]. If granted in terms of child support, the payments would not be tax deductible while as alimony they are a tax (and medicare) deduction for [Alex] and a taxable income to [Terri]. At [Alex's] tax bracket, each thousand dollars of child support has an additional tax and medicare burden of approximately four hundred dollars. Whereas, if the thousand dollars is paid as alimony, [Alex] will not pay the additional four hundred dollars, and [Terri's] taxes will not include medicare or social security and will be at a markedly lower tax rate. The court's analysis of the relative disposable incomes of the parties establishes that the stability of income established by an alimony award will have marked tax advantages for the parties and provide a more evenly balanced and stable basis for adjusting child support during the childrens' minority years. Essentially, the Court finds that the use of alimony allows [Terri] to maintain, not improve, her standard of living and to include the children therein. It seems the far more equitable approach even without consideration of the marked tax savings it generates.

[¶ 16.] This finding clearly reflects the trial court's linkage of the issues of alimony and child support because of the tax advantages of one award over the other.

The linkage of the two issues is also apparent in the trial court's finding that:

> Based upon the foregoing and the evidence relating to the cost of living and expenses associated with all aspects of the post divorce lifestyles of the parties, the Court determines that an alimony award of [$2,450] per month for a period of twelve years is essential for [Terri] to maintain her social standing, standard of living, *and to allow the children to have the same standard of living in both homes.* (emphasis added).

[¶ 17.] This Court has long cautioned against confusing alimony and child support awards. The issue arose before this Court in *Price v. Price*, 278 N.W.2d 455 (S.D.1979). In *Price*, this Court condemned the inequities in the property division, alimony and child support awards in that case, but did not reverse on the basis of the inequities alone. Rather, the Court proceeded to separately review the property division and child support awards based upon the factors and considerations applicable to each. It was in the context of its review of the child support award that the Court also considered the propriety of the trial court's linkage of alimony and child support in directing that, as each child reached the age of majority, the husband's alimony obligation should be reduced by $100 per month. On that issue, this Court wrote that:

> *Although we recognize that awarding alimony and child support payments are in the trial court's discretion, we must stress that alimony and child support are separate concepts. Child support provides for the maintenance of the children while alimony represents a suitable allowance to a party for his/her support.* The amount of the alimony award should not be governed by the number of minor children that are in the household, rather the amount should reflect what is required after an analysis of the factors presented in [*Guindon v. Guindon*, 256 N.W.2d 894 (S.D.1977)] for a suitable allowance to plaintiff. Inasmuch as the alimony award fluctuated with the child support, we must remand the alimony award to the trial court for further consideration based solely upon a suitable allowance to plaintiff independent of the child support consideration. We must also remand the child support award to the trial court for similar reasons, *i.e.,* it appears that the trial court did not primarily consider the maintenance of the minor children in setting the amount of child support at $100 per month per minor child and then, in the alternative, set the amount at $50 per month per minor child accompanied with decreases in alimony of $100 per month as each child reached the age of majority. *Each question must be considered separately,* and defendant's parental responsibility to provide for the maintenance of his children on the basis of the *Guindon* factors should not be interwoven with his marital obligation to plaintiff to provide a suitable allowance for her support.

*Price*, 278 N.W.2d at 458–59 (some citations omitted)(emphasis added). *See also Watson–Wojewski v. Wojewski*, 2000 SD 132, ¶ 21, 617 N.W.2d 666, 671 (on claim that part of child support award was de facto alimony, held that the child support statutes do not authorize an alimony windfall contained in the rhetoric of child support).

[¶ 18.] The alimony and child support awards here violate the principles set forth in *Price*. The amount of Terri's alimony should not have been governed by the presence of children in her household or their needs and standard of living. Rather, the amount should have reflected what was required for a suitable allowance

to *Terri* based upon an analysis of the factors applicable to awarding alimony. Similarly, the trial court did not primarily consider the maintenance of the children or their actual needs and standard of living in setting Alex's child support obligation. *See* SDCL 25–7–6.9 (where parents' combined income is above child support schedule, establishment of support obligation must reflect consideration of children's actual needs and standard of living). Alimony and child support must be considered separately, and Alex's parental responsibility to provide for the maintenance of his children on the basis of the factors applicable to setting child support should not have been interwoven with his marital obligation to provide a suitable allowance for Terri's support. Compounding the problem here was the trial court's focus on the tax considerations involved in alimony and child support awards. Yet, tax considerations are not a recognized factor in awarding alimony or child support.

[¶ 19.] Terri argues that this Court's recent decision in *Peterson v. Peterson*, 2000 SD 58, 610 N.W.2d 69 links the issues of child support and alimony. In *Peterson*, this Court held that a recipient spouse's alimony must be included as part of his or her income and must be deducted from the payor spouse's income in calculating child support according to the statutory guidelines contained in SDCL ch 25–7. This is far different than increasing alimony as a form of child support because of tax considerations as was done here. In addition, our acceptance of the linkage or combination of alimony and child support would actually make compliance with *Peterson* more difficult. Courts would be required to determine the portion of a combined alimony/child support award that should be considered as income to the recipient spouse and as a deduction by the payor spouse in calculating child support. Use of the total alimony award containing sums actually intended for the support of the children would falsely inflate the income of the recipient in the child support equation in violation of the economic realities stressed by the dissent. Thus, the dissent's advocacy of linked or combined alimony/child support awards leads to potential results that are administratively problematic.

[¶ 20.] Another administrative problem posed by the linkage of alimony and child support arises from the role fault plays in the alimony determination. As previously set forth, the parties' relative fault in the termination of the marriage is an appropriate factor to consider in awarding alimony. *Dejong, supra.* It is not, however, an appropriate factor to consider in awarding child support. The obligation to support a child is not premised on one party or the other's fault in the events leading to the termination of the marriage. Linking or combining alimony and child support in the same award would permit the issue of fault to creep into the child support determination. This is not acceptable.

[¶ 21.] Based upon the foregoing, the alimony and child support awards must be reversed and remanded for reevaluation in conformity with *both Price* and *Peterson*. On remand, the trial court should calculate a suitable allowance for alimony for Terri independent of any child support consideration and based *solely* upon the factors applicable to determining alimony. *Price, supra.* Once alimony is determined, the trial court must calculate child support in accord with the applicable guidelines and statutory requirements with appropriate adjustments to the parties' incomes for the amount of alimony in accord with *Peterson, supra.* The trial court's reevaluation must be based upon the appropriate fac-

tors applicable to the particular award under consideration.

### Appellate Attorney's Fees

[¶ 22.] Terri's counsel has filed a motion for an award of appellate attorney's fees accompanied by an itemized statement of costs incurred and legal services rendered per *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). The motion is denied.

[¶ 23.] Reversed and remanded.

[¶ 24.] GILBERTSON, Chief Justice, and ZINTER, Justice, concur.

[¶ 25.] SABERS, Justice, dissents.

[¶ 26.] KONENKAMP, Justice, disqualified.

SABERS, Justice (dissenting).

[¶ 27.] The trial court awarded wife $2,450 per month in alimony for 12 years. This is an annual total of $29,400. The husband's annual income exceeds $250,000 and the majority opinion wholly fails to show where the trial court erred. The reason is obvious-the trial court did not err.

[¶ 28.] In fact, the majority opinion does not even claim that annual alimony of $29,400 out of an annual income exceeding $250,000 is excessive. Nor can the majority opinion legitimately fault the trial court for failing to consider the pertinent factors delineated by this Court for determination of alimony awards. *See* majority opinion ¶¶ 8–14 (detailing the findings of fact and finding, "[t]here is ample evidentiary support in the record for all of the trial court's findings of fact.") Instead, the majority opinion faults the trial court for considering tax consequences and the relationship between alimony and child support. However, as the trial court noted, the relationship between alimony and child support is an extremely important factor as a matter of fiscal reality.

[¶ 29.] Our decision in *Peterson* demonstrates the necessary interplay between child support and alimony in its holding that the alimony recipient must count the alimony as income in determining child support. *Peterson v. Peterson*, 2000 SD 58, 610 N.W.2d 69. There can be no argument that the level of alimony directly affects the level of child support. The consequences of this interplay are felt by both payor and payee in every case.

[¶ 30.] The majority opinion comes to the conclusion that the trial court should be reversed by stretching the holding and giving undue weight to certain language in *Price v. Price* 278 N.W.2d 455 (S.D.1979). This over-reliance on *Price* leads to the holding that essentially, trial courts are barred from considering economic reality in the determination of child support and alimony awards. It is helpful to understand both the factual basis and the actual holding of *Price*.

[¶ 31.] In *Price*, the trial court awarded the wife approximately 3% of the marital property and custody of three minor children. *Price*, 278 N.W.2d at 458. The court gave the marital home and the remainder of the marital property to the husband. Husband's take home pay was approximately $1,000 per month and he had approximately $4,000 in retirement benefits and another $4,000 in a savings account. Wife had no home, no cash, debts of approximately $800 since marital separation and was earning approximately $50 per week. With this minimal income, she was left with the impossible task of housing, feeding and educating the three children. The trial court gave the husband the option of paying a lump sum property settlement, plus child support, or alimony and child support. To his benefit, the husband chose to pay alimony and

child support. The court awarded wife $400 per month alimony which would decrease by $100 per month as each child reached majority. We held:

> The amount of the alimony award should not be governed by the number of minor children that are in the household, rather the amount should reflect what is required after an analysis of the factors prescribed in *Guindon v. Guindon*, for a suitable allowance to plaintiff. *Inasmuch as the alimony award fluctuated with the child support, we must remand the alimony award* to the trial court for further consideration based solely upon a suitable allowance to plaintiff independent of the child support considerations.

*Price*, 278 N.W.2d at 459 (emphasis supplied). We also remanded the child support award because the court did not primarily consider the needs of the children in setting the child support award. We held:

> [D]efendant's parental responsibility to provide for the maintenance of his children on the basis of the Guindon factors should not be interwoven with his marital obligation to plaintiff to provide a suitable allowance for her support.

*Id.* In short, the trial court in *Price* abused its discretion by failing to take into consideration *any* of the applicable factors for determining alimony. The trial court effectively denied wife any alimony by awarding an amount conditioned on the number of children remaining in her home.

[¶ 32.] The present case is distinguishable from *Price*. First, in *Price*, there was an undeniably unjust property division, alimony and child support award. Second, *Price* was reversed and remanded because the purported alimony fluctuated with the child support. Third, at the time *Price* came before this Court, the statutory child support guidelines had not been created. Fourth, in *Price*, the trial court ignored economic reality and gave husband an option of how to pay the appallingly small award to the wife. Finally, the trial court in this case made careful findings with regard to every factor this Court has promulgated for alimony determinations.

[¶ 33.] The majority opinion implies that *Price* stands for the proposition that the trial court is not permitted to mention child support and alimony in the same breath by bemoaning the "linkage" of the child support and alimony issues. This is a misapprehension of the case, which held that the amount of alimony received by the spouse should not be contingent on the number of children in the home. Here, the trial court's decision was based on analysis of the applicable alimony factors and consideration of the tax consequences for husband. The court's specific findings on each factor remove the premise for the majority opinion's conclusion that the trial court abused its discretion by failing to consider the appropriate factors.

[¶ 34.] The majority opinion also cites *Watson–Wojewski v. Wojewski* in support of its holding. *Watson–Wojewski*, 2000 SD 132, 617 N.W.2d 666. In *Watson–Wojewski*, this Court reversed a child support award in excess of $4,000 per month because the budget submitted by the custodial parent included items that were solely for her benefit, rather than for the benefit of the child. We also noted that the trial court failed to make specific findings regarding the child's actual needs and standard of living. Neither error is present in this case. Here, the trial court made specific findings regarding alimony and child support and there is no indication that the child support award is being used as a back door to an otherwise imper-

missible alimony award.[2]

[¶ 35.] The majority opinion goes on to note that the trial court compounded its purported error by focusing on tax considerations and supports its holding of error by asserting that "tax considerations are not a recognized factor in awarding alimony or child support." Majority opinion, ¶ 18. The factors courts must consider in determining alimony are vital to equitable alimony awards. However, those factors are of no use when they are used to obstruct solid economic analysis. This is especially so when the trial court's economic analysis leads to no error. By implication, the majority opinion holds that the trial court is not permitted to consider anything outside the factors we've enumerated in the past. This holding defies both logic and reality. Trial courts should not be prevented from undertaking legitimate analysis of the financial ramifications for each party in their alimony awards. Furthermore, it is clear that the trial court did not base its decision solely on the tax consequences. The trial court noted:

> The court finds that the use of alimony allows [Terri] to maintain, not improve, her standard of living and include the children therein. It seems the far more equitable approach *even without consid-eration of the marked tax savings it generates.*

(emphasis supplied.)

[¶ 36.] The majority opinion does a disservice to the parties and trial court by simply reversing the trial court without any indication that the amount of alimony is either unreasonably high or unreasonably low.[3] In doing so, the majority opinion gives no guidance to the trial court other than to make it clear that the court may not 1) consider the tax ramifications of the alimony and child support awards; or 2) mention child support and alimony in the same sentence. Maybe there should be a law that requires an appellate court to set forth a reasonable sum for alimony when reversing.

[¶ 37.] This holding returns the calculation of alimony by trial courts to the middle ages. It rejects any consideration of a practical, intelligent analysis of the real economic situation of the parties and lends support to a "stab in the dark" or "shoot from the hip" philosophy. I reject this approach, or lack of approach, and dissent.

[¶ 38.] There is no showing of error. There is no abuse of discretion. We

---

2. We also noted that "the indirect financial benefit a custodial spouse receives cannot serve as a justification for denial of support to children whose actual needs and standard of living warrant a particular award." *Watson–Wojewski*, 2000 SD 132, ¶ 21, 617 N.W.2d at 671 (additional citation omitted). The majority opinion's concern that the trial court based its decision on the standard of living of the children and the wife is not warranted given our consistent statements that the former spouse and the children's standard of living are primary considerations in alimony and child support awards.

This concern is further invalidated when one considers the reality that a child support award will *always* indirectly affect the custodial parent's standard of living and an alimony award will *always* indirectly affect the children's standard of living. There is nothing inherently wrong with this reality.

3. Nor would a holding that the alimony is unreasonably high be warranted by the facts. Based on the award, wife will pay income taxes on her alimony *and* husband can deduct the entire amount from his income for federal tax purposes. In fact, according to the trial court's calculations, the $29,400 paid by husband in alimony would actually cost him $17,640 as a result of deductions for federal income and Medicare taxes. This annual amount is clearly reasonable when compared with husband's pre-tax annual income exceeding $250,000.

should affirm the trial court and award the wife $2,000 in attorney fees.